## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        v.                                    CR NO.  07-152 (ESH/JMF)

ANTHONY MAURICE SUGGS,
JULIAN JOHNSON,
JAMES LAWRENCE PARKER,
ERNEST MILTON GLOVER,
GLENDALE EARL LEE,
HELERY PRICE,
NGOZI JOY,[1]

        Defendants.

## DETENTION MEMORANDUM

This matter comes before me upon the application of the United States that the defendants be detained pending trial.  After multiple hearings, the government's motions were granted as to all defendants except for Ngozi Joy, and this memorandum is submitted to comply with the statutory obligation that "the judicial officer shall—include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### FINDINGS OF FACT

#### Overview of the Conspiracy

1.      On June 12, 2007, the Grand Jury returned an indictment against the defendants in this case, alleging their participation in a conspiracy to distribute phencyclidine in the District of Columbia and elsewhere, from on or about August 1, 2005, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including at least June 11, 2007.

---

[1] This defendant was not held.

**Anthony Maurice Suggs**

1.    Suggs ("Applejack" or "Ap") regularly purchased PCP from L. Glover for the purpose of reselling the drug.

2.    The FBI recorded Suggs selling narcotics in controlled buys on three occasions between August 2006 and January 2007.  Suggs received a total of $10,000 for thirty-two ounces of PCP and 125 grams of cocaine.

3.    Suggs is the former boyfriend of Ngozi Joy.  During the course of their relationship, Suggs lived in Joy's residence at 4000 10th St., N.W., Washington, D.C.

4.    In telephone call recorded by the FBI on March 27, 2007, Joy informed Suggs she could "smell it" from outside her house and that a police officer had passed by.  Suggs replied that he would "get something."

5.    After executing a search warrant at Joy's residence on March 27, 2007, the FBI recovered two and one-half gallons of PCP, $7,000 cash, masks, gloves, funnels, and lemon juice bottles.

6.    In a telephone call recorded by the FBI on March 28, 2007, Suggs informed Joy that he would "take the beef" for any illegal contraband recovered from her home.

7.    In conversations in L. Glover's automobile that were recorded by the FBI on April 3, 2007, L. Glover informed a third party that he "took a two and one-half gallon loss," meaning the PCP seized during the execution of the warrant.  Suggs and L. Glover were recorded discussing "water."  L. Glover stated that he purchases "water" for $15,000 per gallon and sells it to Suggs for $21,000 per gallon.

8.    In a conversation between Suggs and L. Glover that was recorded by the FBI on May 4, 2007, Suggs inquired about purchasing "two gallons" and asked whether it is the "old

2

water" or the "good water."

**Julian Johnson**

1.  In August 2006, the DEA monitored telephone calls between Johnson and individuals in Houston, TX.  In accordance with plans made during these conversations, Johnson traveled to Houston to purchase nine kilograms of cocaine.  DEA agents raided the meeting prior to the narcotics being transferred to Johnson's vehicle.

2.  In a telephone call recorded by the FBI on January 10, 2007, Johnson asked Suggs, "Have you taken care of business yet?"  Suggs replied, "Not yet, but later today, after rush hour."  Johnson remarked that he "wanted to go heavy but had no storage bin" and requested "the same as before."

3.  In a telephone call recorded by the FBI on January 11, 2007, Suggs agreed to meet Johnson at his mother's house, located at 1440 V. St., N.W., Apartment 2, Washington, D.C.  Suggs asked if Johnson would "slide that through."  Johnson then asked if Suggs had "luggage" with him.

4.  The FBI stopped intercepting conversations between Johnson and Suggs until March and April, after C. Glover, L. Glover, and Diane Holmes had returned from Atlanta.  A wiretap revealed L. Glover and Suggs were low on PCP prior to this trip.  After returning from Atlanta, frequent sales of PCP resumed.

5.  In a conversation in L. Glover's truck that was recorded by the FBI, L. Glover told Suggs that "water" costs $15,000 per gallon.

6.  On February 23, 2007, the FBI conducted surveillance of a suspected drug transaction between Johnson and Suggs.  The FBI recorded a phone call in which Suggs alerted Johnson to a Dodge Durango with "a cracker on the phone."  Johnson replied that he

believed the vehicle contained "amigos."  FBI agents in the Dodge Durango ended their

surveillance efforts after being spotted by Suggs.  Johnson and Suggs continued

discussing the likelihood that the vehicle contained law enforcement officers in

subsequent conversations recorded by the FBI.

7.      On June 19, 2007, the FBI exercised a search warrant on Johnson's home at 4968

Andrews Court, Apartment 203, Washington, D.C, an address to which the FBI had

previously recorded Johnson providing Suggs with directions.  The FBI recovered

$25,000 at Johnson's residence.  On the same day, the FBI also searched Johnson's

mother's home at 1440 V. St., N.W., Washington, D.C.  The FBI recovered $20,000 in

cash and a .38 caliber revolver.

8.      In conversations in L. Glover's truck that were recorded by the FBI, Donaldson stated

"Ju is selling water" and L. Glover replied "My man is giving it to Ju."  'Ju' is a

nickname by which Johnson is known.

**James Lawrence Parker**

1.      Parker regularly purchased quantities of PCP from Suggs for the purpose of reselling the

drug.

2.      Shortly after initiating wire taps on January 9, 2007, the FBI began recording phone calls

between Parker and Suggs.

3.      In a telephone call recorded by the FBI on January 10, 2007, Parker called Suggs, stated

that he would like to meet after collecting debts owed by customers.  The two arranged to

meet the following day.

4.      In a telephone call recorded by the FBI on January 14, 2007, Parker indicated that he had

called to "holler" and informed Suggs that his "phone was ringing off the chain."

4

5.      In a telephone call recorded by the FBI on February 14, 2007, Parked indicated that he wanted more PCP but that Suggs had none.  L. Glover, who supplied Suggs, was also out.

6.      On March 6, 2007, C. Glover, L. Glover, and Holmes traveled to Atlanta to purchase PCP.

7.      In a transaction recorded by the FBI on June 28, 2006, a cooperating witness purchased marijuana from Parker.  During the transaction, Parker offered to supply cocaine to the cooperating witness.

8.      In a transaction recorded by the FBI on September 22, 2006, Parker sold four ounces of PCP to the cooperating witness.

9.      In a transaction recorded by the FBI on January 4, 2007, Parker supplied the cooperating witness with eight ounces of PCP after originally agreeing to supply twelve ounces.  Once the sale was arranged, the FBI recorded fifteen telephone conversations between Parker and Suggs.  After collecting money from the cooperating witness, Parker entered a vehicle registered to Suggs before returning with the PCP.

10.     During a search of Parker's residence on May 25, 2007, the FBI recovered eight ounces of PCP, two ounces of marijuana, and narcotic packaging paraphernalia, including bottles, envelopes, cutting materials, and scales.

**Ernest Milton Glover**

1.      E. Glover is the brother of L. Glover and the uncle of C. Glover.

2.      E. Glover regularly purchased quantities of PCP from Suggs.

3.      In a telephone call recorded by the FBI, E. Glover called Suggs and stated that he would like to acquire "pockey books."  Suggs subsequently traveled to E. Glover's home at 47 Randolph Place, Washington, D.C.

5

4.      In a telephone call recorded by the FBI, E. Glover informed Suggs that customers were complaining about the quality.

5.      After executing a search warrant at E. Glover's residence, located at 47 Randolph Pl., Washington, D.C on June 19, 2007, the FBI recovered twenty ounces of PCP, scales, and packaging vials.  The FBI also recovered three shotguns, including one shotgun that E. Glover's juvenile nephew was loading when officers entered the premises.

**Glendale Earl Lee**

1.      Lee received PCP for distribution from Suggs.

2.      In a telephone call recorded by the FBI on January 15, 2007, Lee asked Suggs for, "Two. One for [another person]. One for me."

3.      In a telephone call recorded by the FBI on February 27, 2007, Johnson asked Lee if he had straightened out his bill with Suggs.

4.      In a telephone call recorded by the FBI on April 27, 2007, Lee asked Suggs to bring him a "deuce."

**Helery Price**

1.      In a telephone call recorded by the FBI on January 10, 2007, Price agreed to meet Suggs.

2.      In a telephone call recorded by the FBI on January 15, 2007, Suggs answered affirmatively when Lee asked "got that info?"  The FBI recorded a series of calls in which Lee and Suggs arranged to meet in person.  In one call, Suggs informed Lee "I'm outside."

3.      In a telephone call recorded by the FBI on January 16, 2007, Lee and Suggs agreed to meet on Water St., S.W., Washington, D.C.  FBI surveillance units recorded Suggs arriving in the 600 block of Water St.  Lee entered and exited a Chevrolet Tahoe belonging to Suggs.  In a subsequent recorded conversation, Suggs informed Lee of a vehicle that Suggs suspected contained law enforcement.  Lee and Suggs continued to discuss the possible presence of surveillance and the need to be careful.

4.      In a series of telephone calls recorded by the FBI during February 2007, Suggs and Lee discussed, in code, delivery and the price of drugs.  In one such call on February 10, 2007, Suggs informed Lee that he was "playing it by ear."

5.      On March 6, 2007, C. Glover, L. Glover, and Holmes traveled to Atlanta to purchase PCP.

6.      In a telephone call recorded by the FBI on March 8, 2007, Lee and Suggs agreed to meet.

**7.**      After executing a search warrant at Joy's residence on March 27, 2007, the FBI recovered two and one-half gallons of PCP, $7,000 cash, masks, gloves, funnels, and lemon juice bottles.

**REASONS FOR DETENTION**

An examination of the factors required to be considered by 18 U.S.C. § 3142(g) compels

the conclusion that there is clear and convincing evidence that the defendants' release on any condition or combination of conditions will not reasonably assure the safety of the community and their detention is, therefore, appropriate.

### The Statutory Standard

Defendants who are charged with an offense for which a term of imprisonment of 10 years is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951 *et seq.*), or the Maritime Drug Law Enforcement Act (46 U.S.C. §§ 1901 *et seq.*) are eligible for pretrial detention. 18 U.S.C. § 3142(f)(1)(C).  If there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of 10 years or more is prescribed in those three statutes, it is presumed that there is no condition or combination of conditions which will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e).  In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer is to consider:

1.    The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

2.    The weight of the evidence;

3.    The history and characteristics of the person, including

     a.    His character, physical and mental condition, family ties, employment, financial resources, length of residence in the community and community ties;

     b.    Past conduct, history relating to drug or alcohol abuse;

     c.    Criminal history;

8

      d.      Record concerning appearance at court proceedings;

      e.      Whether, at the time of the current offense or arrest, the person was on probation, parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or local law;

4.      The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142.

An examination of these factors compels the conclusion that there is clear and convincing evidence that the defendants' release on any condition or combination of conditions will not reasonably assure the safety of the community and their detention is, therefore, appropriate.

**The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.** The offenses charged involve these defendants' participation in a conspiracy to distribute phencyclidine, an extremely dangerous narcotic drug.

**Defendants' character, physical and mental condition, family ties, employment, financial resources, and length of residence in the community.** See attached chart.

**The weight of the evidence.** The weight of the evidence is substantial. Many of the transactions were captured on audio tape. In addition, there were numerous searches of the defendants' residences, which yielded vast quantities of narcotics, firearms, and US currency.

**History relating to drug or alcohol abuse.** See attached chart.

**Record concerning appearance at court proceedings and prior criminal record.** See attached chart.

**Whether on probation or parole at the time of the present offense.** See attached

9

chart.

## CONCLUSION

As indicated in the attached chart, several of these defendants have prior convictions for the same or similar offenses involving narcotic drugs.  Several of these, in turn, were on some form of judicially supervised release when the Grand Jury found probable cause to believe that they committed the crimes charged.  Remarkably, some were on supervised release in this very court.  Given this history, and their obvious recidivism, I can have no confidence that they will be faithful to the conditions that I would set, including the most significant condition - that they commit no new crime on release.

There are other defendants who have no prior criminal records and who have unquestionably strong roots in the community.  But, their participation in the conspiracy cannot be viewed atomistically, as if the court were dealing with a single fall from grace in an otherwise exemplary life.  To the contrary, the government's evidence presented to the Grand Jury showed intense involvement over an extended period of time in a conspiracy that must have brought hundred of gallons of PCP into their very communities, culminating in the seizure of large quantities of the drug and otherwise inexplicably large amounts of money.  I therefore must conclude that on this record, they participated at high levels of a wholesale conspiracy to introduce large quantities of PCP into the community, yielding equally larger profits.  The sale of that drug on the streets is attributable to their participation in this conspiracy and, in the most obvious sense, the risk that they will resume that activity truly endangers this community.

Thus, I will order defendants Suggs, Johnson, Parker, E. Glover, Lee, and Price detained without bond pending trial.

10

\_\_/s/_____

**June 28, 2007**                    **JOHN M. FACCIOLA**
                                     **UNITED STATES MAGISTRATE JUDGE**

| DEFENDANT | CRIMES CHARGED | CRIMINAL HISTORY | PROBATION OR PAROLE AT TIME OF OFFENSE | COMMUNITY TIES |
|---|---|---|---|---|
| Anthony Maurice Suggs | - Conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine<br><br>- Unlawful possession with intent to distribute one kilogram or more of phencyclidine and aiding and abetting | <u>10/17/89</u><br>- Transporting a handgun (MD)<br>- 3 years of incarceration / confinement with 3 years suspended<br>- 1 year supervised release<br>- $115 court cost<br><br><u>11/20/98</u><br>- Unlawful distribution of 5 grams of more of cocaine base<br>- 87 months of incarceration / confinement<br>- 3 months supervised release<br>- $100 court cost | - Defendant is on supervised release in this court for the 11/20/98 charge | - Lifelong DC resident<br>- Single<br>- 3 children (who do not live with defendant)<br>- Lives with grandmother (for past 2 months)<br>- Employed as a sanitation worker with the DC Department of Public Works (for past 2 years)<br>- No information on substance abuse was available |
| Julian Johnson | - Conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine. | <u>12/2/98</u><br>- Possession of marijuana (MD)<br>- Probation without judgment<br><br><u>3/11/03</u><br>- Driving without a permit<br>- 10 days of confinement with 10 days suspended<br>- 1 year unsupervised probation<br>- $50 fine | - N/A | - Lifelong DC resident<br>- Single<br>- 2 children (who live with defendant)<br>- Lives with his mother<br>- Employed by Minks Incorporated (for past 2 years) and by H20 Restaurant and Lounge (for past 4 years)<br>- No information on substance abuse was available |

| James Lawrence Parker | - Conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine | 10/21/88<br>- Attempted possession cocaine<br>- 180 days confinement with 120 days suspended<br>- 2 years probation | - Defendant was on release from custody (on a $50,000 surety bond) for a pending felony drug charge in Maryland | - Has lived in DC for two years<br>- No children<br>- Single<br>- Lives with a friend in Maryland (for past 6 months)<br>- Unemployed<br>- No information on substance abuse was available |
|---|---|---|---|---|
| Ernest Milton Glover | - Conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine. | 8/10/83<br>- Possession with intent to distribute cocaine<br>- 3 years supervised probation<br><br>4/30/96<br>- Unlawful possession with intent to distribute cocaine within 1000 feet of a public school<br>- 108 months confinement<br>- 8 years supervised release | - Defendant was on supervised release for the 4/30/96 charge and has a pending violation hearing scheduled before Chief Judge Hogan on 7/30/07 for non-compliance with drug testing and treatment | - Lifelong DC resident<br>- Married<br>- Lives with spouse and 2 children<br>- Lives in private home (for past 18 years)<br>- Employed by DC Department of Public Works (for past 2 years)<br>- Current drug use indicated |
| Glendale Earl Lee | - Conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine | 2/14/86<br>- Destruction of property (MD)<br>- 3 years confinement with 2 years suspended<br>- 3 years supervised probation revoked<br><br>12/31/88<br>- Possession with intent to | - Defendant was on parole for the 12/31/1988 drug charges | - Lifelong DC resident<br>- 2 children (who do not live with defendant)<br>- Single<br>- Lives with a friend in DC<br>- Employed as shift supervisor by Caribou Coffee (for 7 months) |

| | | | | |
|---|---|---|---|---|
| | | distribute PCP<br>- 2295 days incarceration / confinement<br>- 3-10 years confinement<br>- 24 months probation revoked<br><br>12/31/88<br>- Attempted position with intent to distribute PCP<br>- 2295 days incarceration / confinement<br>- 1 year of confinement<br>- 24 months probation revoked<br><br>5/26/93<br>- Possession PCP<br>- 1 year confinement<br><br>10/26/05<br>- Driving a vehicle without a permit<br>- 90 days confinement with 75 days suspended<br>- 18 months unsupervised probation<br>- $100 court fine<br><br>10/26/05<br>- Driving an unregistered vehicle<br>- 30 days confinement with 30 days suspended | | - Current drug use indicated |

14

| | | | |
|---|---|---|---|
| | | - 18 months unsupervised probation<br>- $100 court fine | |
| Helery Price | - Conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine | <u>5/29/82</u><br>- Attempted petit larceny<br>- 18 months supervised probation<br><br><u>11/10/82</u><br>- Assault with intent to rob while armed<br>- 10 years confinement<br><br><u>2/17/88</u><br>- Possession with intent to distribute cocaine<br>- 20 months to five years confinement with 20 months to five years suspended<br>- 3 years probation<br><br><u>6/10/93</u><br>- Controlled Substance Act charge<br>- 120 months confinement<br>- 6 years supervised release | - Parole closed unsuccessfully on 11/10/82 charge<br>- Parole close successfully on 10/29/92<br>- Defendant is on supervised release for 6/10/93 drug charge and his compliance is reported as being margin due to his failure to submit monthly reports and unsuccessful home visits – although defendant has been testing negative | - Lifelong DC resident<br>- 1 child (not living with defendant)<br>- Single<br>- Lives with his sister in DC<br>- Employed as a lot attendant for John Fenner Car Dealer (for past 3 years)<br>- No information on substance abuse was available |