## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 07-152 (ESH) |
| | : | |
| ANTHONY MAURICE SUGGS, *et al.*, | : | |
| Defendants. | : | |

## GOVERNMENT'S RESPONSE TO
## DEFENDANTS' MOTION TO COMPEL DISCOVERY

The United States of America, by its attorney, the United States Attorney for the District of

Columbia, respectfully submits the following response to defendants' Motion to Compel Discovery

filed November 13, 2007.  As grounds for this response the government cites the following points

and authorities and such letters addressing discovery as have been previously filed with this Court.

*Background*

1.    The Indictment in this matter was filed June 12, 2007 and defendants were arraigned

on that Indictment on June 19, 2007 and June 20, 2007 following their arrests.  Discovery in this

matter commenced at the first status hearing in this matter on July 27, 2007 when the government

provided copies of all the interceptions made in the course of four court ordered electronic

surveillances conducted in connection with this prosecution.  Thereafter, on August 1, 2007 the

government provided copies of all of the documents relating to the authorization for those

interceptions and arranged for all defense counsel to view the non-narcotic evidence seized by law

enforcement during the course on the investigation.  On September 17, 2007 Mr. Gilbert, on behalf

of all counsel in the *Suggs* matter, submitted a letter regarding those items the defendants sought in

discovery.  At the next status hearing on September 21, 2007, during which the Court recommended

Mr. Gilbert's discovery letter to counsel in the *Glover* matter as "very comprehensive," *see*

Attachment A to defendants' Motion to Compel Discovery, the government indicated that it was its

intention to provide most, if not all, of the discovery requested in that letter by October 15, 2007.

On October 16, 2007, pursuant to a timely request of the United States, the Court extended that date

to October 22, 2007.  By letter dated October 23, 2007, *see* Attachment One hereto, the government

provided the majority of the requested materials.  That letter reflected the government's knowledge

that some of the materials, in particular the surveillance video tapes, was in an inconvenient format.

Over the next two weeks, in a series of letters, emails and telephone calls, the parties dealt with

various concerns relating to discovery and the format in which discovery was provided.  In an effort

to preserve any issues relating to discovery, Mr. Gilbert on behalf of all the defendants, filed the

instant Motion to Compel Discovery.

      2.      On November 16, 2007, the defendants, represented by Mr. Gilbert, and the United

States had a conference with the Court in chambers to discuss the state of discovery.  Utilizing the

defendants' September 17, 2007 discovery letter and their November 13, 2007 discovery motion as

bench marks for the universe of requested discovery, those discussions disclosed that the discovery

questions which remained to be resolved before trial fell into several distinct areas.  First, defendants

had an outstanding request to view the information saved in the various cellular telephones seized

in searches during this investigation.  Closely related to that request was a similar request to inspect

the hard-drives of any computers seized in searches during this investigation.  With regard to the

cellular telephones, the government advised that it had not viewed the information the defendants

sought because all of the cellular telephones involved had dead batteries which precluded viewing that information.  The government advised the Court and defendants that it would obtain the necessary equipment to charge the telephones and then make them available to the defense.  The equipment has now been located and will be purchased as quickly as possible.  With regard to computer hard-drives, the government reported that the only computer seized relevant to defendants in this trial was from Julian Johnson, a former defendant in this matter, and that hard-drive would be available for examination by defendants' expert if they desired.  On November 21, 2007 we made arrangements with Mr. Gilbert to have available for defense inspection on December 11, 2007 all cellular telephones seized from any defendant charged in the original Indictment in this case.  We advised Mr. Gilbert that we would not present in this trial any evidence recovered from Mr. Johnson's hard drive and Mr. Gilbert determined that under those circumstances he had no need to examine that hard drive.  Remaining counsel were advised that they would need to notify the government if they wished to see any additional drug evidence, cellular telephone or Mr. Johnson's hard drive on December 11, 2007.

3.    Second, the parties discussed with the Court the state of discovery regarding video taped surveillance.  The government reported that during the course of this investigation law enforcement had recorded 82 video tapes relevant to this prosecution and of those 82 tapes the United States had supplied the defendants with 73 video tapes recorded in digital form on several computer discs.  Those 73 video tapes were initially provided in a manner and format that made them difficult for the defense to view. The government has since provided the tapes to defense counsel in a more user friendly format.  With regard to the remaining nine tapes, the government explained that one video tape was a pure *Jencks* statement of a witness that the United States may present at trial.

3

The eight remaining tapes were created in surveillance of the several "controlled buys" which preceded electronic surveillance in this matter, including five tapes which are directly relevant to defendants in the January 22, 2008 trial, had been withheld by the United States because they disclosed the identity of government witnesses. We are now working on supplying those five tapes which have already been converted to a digital format. It is our plan to "pixelate" the cooperating witnesses' faces prior to supplying the tapes to defense counsel.

4.    Third, defendants suggested that the sooner they could obtain transcripts of the approximately 175 communications[1] the government contemplated using in its presentation of the evidence in this matter, the better. Defendants reiterated their intention to comply with the agreement among the parties that unless and until a transcript was designated by the United States as final, it could not be used to cross examine or impeach any witness. The government indicated that there were initial drafts, created by clerical personnel not familiar with the investigation and the defendants, of almost all the transcripts of calls likely to be used at trial. Fully and completely trusting in counsels' agreement, the government's concern in supplying these drafts was not that they would create impeachment material but rather that they would create a false impression and confusion regarding the government's evidence. The transcripts in their present form may misidentify the speakers involved or particular things those speakers said and for this reason the government wishes to proof read those drafts before supplying them to defendants. We advised that we would supply those proof read transcripts to the defendants as soon as they became available and further that, as suggested by Mr. Gilbert in his letter of November 15, 2007, we would develop some

---

[1] We use the word "communications" here as a term of art since the recorded material presented to the jury will be wire communications intercepted over cellular telephones and oral communications intercepted in and in the vicinity of Lonnell Glover's pick up truck.

marking system to identify various drafts of individual transcripts.  On November 21, 2007 under separate cover, we delivered to each defense counsel a disc containing 112 draft transcripts.

5.      Fourth, the defendants have requested an opportunity to examine the narcotics evidence seized in this case, evidence which was not available in September when the defense counsel viewed the bulk of the evidence seized in this case.   In a letter dated November 14, 2007, we advised that the narcotics evidence would be available to defense counsel for inspection by appointment on November 26, 27, and 18, 2007.   Mr. Gilbert reported that those dates are inconvenient for him and we advised that in addition to making the evidence available on those dates, we would make the evidence available to Mr. Gilbert and his agents on December 11, 2007, the first business day Mr. Gilbert is available.  At Mr. Gilbert's suggestion, all defense counsel will be invited to that viewing session and unless notified of a broader request by one of the other defense counsel, the government will make available for inspection all drugs seized which are attributed to any defendant charged in the original Indictment in this case.

6.      Finally, the defendants expressed concern regarding discovery of materials relevant to any expert witnesses the United States might present.  The parties agreed that the defendants had received the DEA 7 laboratory reports on all drug evidence seized.  The government indicated that it was collecting reports from the FBI laboratory reflecting fingerprint examination and analysis of certain exhibits and the examination and analysis of certain exhibits for drug trace evidence.[2] The

---

[2]  We attempted to make clear at the November 16th conference that the forensic examination of evidence in this case is ongoing in the FBI laboratory.  This is in part due to the fact that there is a standard protocol which dictates the order in which exhibits are examined when, as here, they are to be examined for more than one type of evidence. In this case some exhibits had to go to the DEA laboratory first and then through the FBI lab "protocol."   In addition, the FBI laboratory serves a nationwide clientele which includes federal and state law enforcement agencies while the DEA laboratories are organized regionally and serve only

government advised that in addition to collecting the reports from the experts in this case, it was also collecting each expert's *curriculum vitae* and working papers relevant to their examinations of evidence in this case. Defendants and the Court inquired as to whether the United States intended to call drug experts to testify as to the common meaning of terms utilized by co-conspirators in intercepted communications. The government has not yet made its determination in this regard.

*Argument*

Given the background set out above the government submits that the following summarizes the current state of discovery in this matter. In an effort to organize this material in a manner which is helpful to the Court and because defendants' September 17, 2007 letter describes the universe of defense discovery requests, in this response we have adopted the format of that September 17th letter.

I. WIRETAP INFORMATION

A. Linesheets; B. Daily Reports; C. Operating Procedures; and Transcripts of the Intercepts.

Defendants requested "the 'linesheets' or contemporary synopses of the wiretap interceptions produced in a single file for each wiretap." Defendants also requested "the daily reports as to the number of pertinent calls, the number of 'minimizations,' and any malfunctions or irregularities" and the operating procedures "to be used and written operating procedures to be kept as a reference." The government provided all this material in its response dated October 23, 2007, *see* Attachment One hereto, unfortunately the materials provided were among those which were in an unuseable format. By the time of the November 16th conference (hereinafter "the conference") these materials had been supplied to the defense in a format useable by the defense.

---

clientele in that region.

II.  PHYSICAL EVIDENCE

    A. Documentation

Defendants requested documentation regarding "the search of John Crum's house in Virginia," and they also requested "the documents concerning the actual search of Ernest Glover's house . . . ." Finally, defendants requested documentation regarding the search of Jannazzo Boyd's residence, which is located at 3331 22nd Street, Apartment G, S.E., Washington, D.C. We responded that some of these materials had been previously supplied and that materials relating to the search of Mr. Boyd's premises were included in the materials which accompanied our October 23rd submission.

    B.  Cellphones; C.  Computer Hard Drives

Defendants requested an opportunity to examine the cellular telephones and computer hard drives recovered by law enforcement in this case. We responded by indicating that would provide an opportunity, under law enforcement supervision, to examine those cellular telephones and hard drives seized by law enforcement in the course of this investigation. As we explained at the conference, we seized only one computer during this investigation relevant to defendants in this trial, which belonged to Julian Johnson. We will make that computer and the cellular telephones available to the defense at a time agreeable to them and the FBI agents who will provide the evidence and monitor the process of examination. We are endeavoring to obtain the recharging equipment for the cellular telephones in our custody and are hopeful we will have this material when Mr. Gilbert is scheduled to examine the narcotics evidence on December 11, 2007.

D.  Items Seized by Consent

Defendants requested information regarding items seized by means other than pursuant to search warrants.  We noted that in the FD-302 pertaining to Mr. Glover's residence at 9002 Old Palmer Road, Fort Washington, MD, there were items recovered from that residence by way of a consent search and those items were made available for defendants' inspection when they examined the physical evidence in September.  Similarly, while arresting Glendale Lee at 3536 New Hampshire Avenue, N.W., Washington, D.C., Mr. Lee and Patricia Hill  gave consent to search the that residence as reflected in an FD-302 previously provided and defendants had an opportunity to view any items seized when they reviewed all the evidence at the FBI Office.  Daniel Thompson's 1994 Infiniti Q45 was searched by way of consent to search.  Nothing was recovered from the automobile.

Finally, during the arrest Jannazzo Boyd at 3331 22nd Street, S.E., Apt. G, Washington, D.C., Mr. Boyd consented to a search of his residence as reflected in the FD-302 concerning that search.  *See* ¶ IIA, *supra.*  Evidence seized in the searches associated with Mr. Boyd's arrest were also among those examined by the defendants in September.

III.  SUSPECTED DRUG EVIDENCE

Defendants requested documentation regarding the drug evidence seized in this case and we provided a DEA laboratory report, a DEA-7, and photographs of the drug evidence, if they exist, for each drug submission in this case.  These items were contained in the materials accompanying our October 23rd letter.  Those materials were arranged in sub-folders titled in the various defendants' names and indicated which of the drugs seized were recovered from a location connected to that defendant.

8

IV.  OTHER GATHERED DATA

A. Pen Registers

Defendants requested pen register "data in a readable form and would like copies of the documentation supporting it."  We provided all pen register data in the government's possession. In a subsequent letter, reasoning from anomalies in the materials we supplied, Mr. Gilbert expressed concern that perhaps through some error there were omissions.  We caused the FBI to review the materials provided and determined that all pen register data had been provided.  With respect to the supporting documents, we declined to provide them relying on this Court's opinion in another wiretap case that these items are not discoverable.  *See United States v. Antoine Jones*, 451 F.Supp.2d 71(D.D.C. 2006).

B. Tracking or Global Positioning Data

Defendants requested "global positioning system data."  which we have provided .

C. Cellphone location Data

Defendants requested "data as to geographic cell location of calls made by cellphone" which we provided.

D. Surveillance Recordings.

Defendants requested law enforcement surveillance recordings utilized by law enforcement in this case.  We sent the video recorded discs to a company to have them placed on a compact disc. Unfortunately, the company did not fully comply with our request and while the videos were converted to a digital format they were not user friendly.  Nonetheless, we supplied the inferior product on the theory that something was better than nothing and we began to work on converting

9

the material to a more convenient format.  Shortly thereafter, in another submission, we supplied the same material in that more convenient form.  We also supplied a Video Surveillance Log which briefly described the contents of each video.[3]

## V.  FORENSIC EXAMINATION AND EXPERT TESTIMONY

a.  Forensic Examinations; B.  Forensic Experts; C. and Other Experts

Defendants  requested "reports of any forensic examinations . . . experts to testify about any forensic examination . . . and experts to testify about topics other than forensic examination . . .." We explained that other than the DEA laboratory reports which were included in our October 23rd submission, we had not as yet been provided with any reports pertaining to forensic examinations. We anticipate obtaining this information, and will provide the reports, the name of the expert, and a *curriculum vitae*.  We noted that we expect to obtain reports regarding examinations for narcotics traces and fingerprints.  As we stated at the conference, once we have obtained transcripts we may also engage the services of an expert to characterize the activity discussed in intercepted conversations.

## VI.  STATEMENTS

Defendants requested that any statements made by their clients to law enforcement be identified and the content and surrounding circumstances be described.  We advised that the defendant Lena Brown made a statement which was detailed in a FD-302 which was supplied. Additionally, we advised that defendants John Smith, Ronald Cook, and Herbert Young also made statements which are reflected in previously provided FD-302 reports.  Finally, in our response to

---

[3] Each of these submissions regarding video surveillance did not contain the nine videos described on page 2, *supra.*

his motion to suppress the fruits of the search at 4000 10th Street, N.E., we advised counsel for Mr.

Suggs of statements of his client at the scene of that search.

## VII.  IDENTIFICATIONS

Defendants requested that we notify them of "any identification procedures conducted by law

enforcement officials with respect to any of our clients."  In our October 23rd letter we advised that

no identification procedures were conducted with regard to any of the defendants.

## VIII.  TRIAL EXHIBITS

Defendants requested that the government "produce diagrams, charts, maps, aerial

photographs . . . as far advance of trial as possible."  We will work with you in an effort to provide

you an opportunity to examine these items prior to trial and we hope to accomplish most, if not all

of this before the Christmas holidays.

## IX.  404(b) EVIDENCE

Defendants requested all "Federal Rule of Evidence 404(b)" evidence the government intends

to present at trial.  The government filed a 404(b) motion outlining the criminal conduct/prior bad

acts it intends to introduce for each defendant.  At the time of the filing of the motion we did not

have the police reports documenting the criminal conduct/bad acts and our notice was compiled from

the defendants' criminal records.  We took steps to accumulate the USAO and law enforcement files

regarding these convictions to determine what was available to us for use in the trial of this matter.

Defendants have since filed a motion regarding the use of Rule 404(b) evidence in this case.  Once

we have received and reviewed all of the documentation, we will supplement our 404(b) motion.

## X.  EXCULPATORY EVIDENCE

Defendants in their September 17, 2007 letter made the requisite *Brady* demand.  We responded, as we are sure they expected, that we were aware of our obligations in this regard including our ongoing responsibility to disclose evidence helpful to a defendant on the question of guilt or innocense and upon the question of sentencing.  We have no knowledge of any exculpatory evidence and any exculpatory information comes to our attention, we will notify you and turn that information over to the defendants immediately.

**WHEREFORE**, we respectfully submit that the defendants' Motion to Compel Discovery should be denied. subject to renewal should any problems develop.


JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


_____
WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney


_____
ANTHONY SCARPELLI
Assistant United States Attorney


_____
JOHN K. HAN
Assistant United States Attorney

*Certificate of Service*

I HEREBY certify that I have caused a copy of the foregoing government's response to defendants' Motion to Compel Discovery and proposed Order to be served by mail upon counsel, for defendants as listed below;  this 21st day of November, 2007.

_____

WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney
D. C. Bar No. 166-991
555 4th Street, N.W., Fourth Floor
Washington, D.C.  20001
(202) 305-1749

**Anthony Maurice Suggs**
Patrick Donahue, Esquire
18 West Street
Annapolis, MD   21401

**James Lawrence Parker**
James W. Rudasill, Jr.
601 Indiana Avenue, N.W. #500
Washington, D.C. 20004

**Ernest Milton Glover**
Anthony Martin, Esquire
7841 Belle Point Drive
Greenbelt, Maryland, 20770

**Glendale Earl Lee**
Frederick Jones
5901 Montrose Rd.,
Apt. 1009 North
Rockville, Maryland 20852

**Helery Price**
Richard K. Gilbert
601 Pennsylvania Avenue, N.W.
Suite 900, South Bldg.
Washington, D.C. 20001

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **Criminal No. 07-152 (ESH)** |
| | : | |
| **ANTHONY MAURICE SUGGS,** *et al.,* | : | |
| **Defendants.** | : | |

# ORDER

Upon motion of the defendants to compel discovery and after a review of the government's response thereto and the entire record in this matter, it is this _____ day of November, 2007,

**ORDERED** that defendants' motion be, and hereby is, denied subject to renewal if necessary.

_____
ELLEN SEGAL HUVELLE
United States District Judge

Copies to:

William J. O'Malley, Jr.
Anthony Scarpelli
John K. Han
Assistant United States Attorneys

**Anthony Maurice Suggs**
Patrick Donahue, Esquire
18 West Street
Annapolis, MD   21401

**James Lawrence Parker**
James W. Rudasill, Jr.
601 Indiana Avenue, N.W. #500
Washington, D.C. 20004

**Ernest Milton Glover**
Anthony Martin, Esquire
7841 Belle Point Drive
Greenbelt, Maryland, 20770

**Glendale Earl Lee**
Frederick Jones
5901 Montrose Rd.,
Apt. 1009 North
Rockville, Maryland 20852

**Helery Price**
Richard K. Gilbert
601 Pennsylvania Avenue, N.W.
Suite 900, South Bldg.
Washington, D.C. 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      :
                                 :
          v.                  :       Criminal No. 07-152 (ESH)
                                 :
ANTHONY MAURICE SUGGS, *et al.*,  :
            Defendants.     :

GOVERNMENT'S RESPONSE TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY

ATTACHMENT ONE



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

October 22, 2007

Patrick Donahue, Esquire
18 West Street
Annapolis, MD   21401

**Re:  United States v. Anthony Maurice Suggs**
**Criminal Number 07-152-01 (ESH)**

Dear Counsel:

We are in receipt of your letter of September 17, 2007, requesting certain discovery materials in the above-captioned matter.  If an effort to respond concisely to your request, we have responded in the same fashion as outlined in your September 17th letter.  We have provided the information you requested on compact discs.

I.  WIRETAP INFORMATION

A. Linesheets; B.  Daily Reports; C. Operating Procedures; and Transcripts of the Intercepts.

You have requested "the 'linesheets' or contemporary synopses of the wiretap interceptions produced in a single file for each wiretap."  On the compact disc labeled Discovery October 22, 2007, we have a folder labeled WIRETAP INFORMATION.  Within that folder, there is a sub-folder labeled Linesheets.  That sub-folder contains the information you requested.  You have also requested "the daily reports as to the number of pertinent calls, the number of 'minimizations,' and any malfunctions or irregularities."  Withing the Wiretap Information folder there is a second sub-folder labeled Daily Reports.  That sub-folder contains the information you requested.  You have also requested the operating procedures "to be used and written operating procedures to be kept as a reference."  Withing the Wiretap Information folder there is a third sub-folder labeled Operating Procedures.  That sub-folder contains the information you requested.  You have also requested transcripts of the Intercepts.  We are diligently working on the transcripts, and should have a copy to you in the near future.

2

## II. PHYSICAL EVIDENCE

### A. Documentation

You requested documentation regarding "the search of John Crum's house in Virginia." We believe that since your preparation of the September 17th discovery request letter, we have provided that information to you. You have also requested "the documents concerning the actual search of Ernest Glover's house . . . ." These documents were previously provided to you on the compact disc labeled "Search Warrant Docs and Photo Disc 3." (See government's correspondence dated September 14, 2007). Finally, you requested documentation regarding the search of Jannazzo Boyd's residence, which is located at 3331 22nd Street, Apartment G, S.E., Washington, D.C. There is a folder on the compact disc labeled Miscellaneous. Within that folder there is a sub-folder labeled 3331 22nd Street, Apartment G, S.E.

### B. Cellphones; C. Computer Harddrives

You have requested that you be permitted to examine the cellular telephones and computer harddrives recovered by law enforcement in this case. We will provide you the opportunity to examine these cellular telephones and harddrives, under law enforcement supervision, at a time agreeable to you and the F.B.I. special agents assigned to this case. We are endeavoring to obtain the recharging equipment for the cellular telephones in our custody. Once we have these available, we will make arrangements for your inspection of the cellular telephones and the computers.

### D. Items Seized by Consent

You requested information regarding items seized by means other than by way of search warrants. As noted in the FD-302 pertaining to 9002 Old Palmer Road, Fort Washington, MD, there were items recovered from that residence by way of a consent search. These items were made available for your inspection when you went to the FBI's Washington Field Office. While arresting Glendale Lee at 3536 New Hampshire Avenue, N.W., Washington, D.C., Glendale Lee and Patricia Hill gave consent to search the that residence. See FD-302 previously sent to you by way of discovery. You were provided an opportunity to view these items when you reviewed all the evidence at the FBI Office. Daniel Thompson's 1994 Infiniti Q45 was searched by way of consent to search. Nothing was taken from the automobile. While arresting Jannazzo Boyd at 3331 22nd Street, S.E., Apt. G, Washington, D.C., he consented to a search of the residence. See FD-302 concerning that search which is included in this discovery submission, ¶ IIA, *supra.* You were provided an opportunity to view these items when you reviewed all the evidence at the FBI Office.

## III. SUSPECTED DRUG EVIDENCE

You have requested documentation regarding the drug evidence seized in this case. We have provided you a DEA laboratory report, a DEA-7, and photographs of the drug evidence, if they exist, for each drug submission in this case. These items are contained on the compact disc in a folder

3

titled Suspected Drug Evidence. Within that folder are sub-folders titled in various of the defendants' names indicating that drug which were the subject of analysis in the reports in that sub-folder were seized from a location connected to that defendant.

## IV. OTHER GATHERED DATA

### A. Pen Registers

You have requested pen register "data in a readable form and would like copies of the documentation supporting it." We provided you with the pen register data. these items are contained on the compact disc in a folder titled OTHER GATHERED DATA. A sub-folder within that folder is labeled pen register, which contains the data. With respect to the supporting documents, we have not provided them to you, and believe that based on Judge Huvelle's rulings in other wiretap cases, these items are not discoverable. *See United States v. Antoine Jones*, ____F.Supp ___, 2007 WL 2506400 (D.D.C.,2007).

### B. Tracking or Global Positioning Data

You requested "global positioning system data." We have provided you with the global positioning data. These items are contained on the compact disc in a folder titled OTHER GATHERED DATA. A sub-folder within that folder is labeled tracking and GPS data, which contains this information.

### C. Cellphone location Data

You have requested "data as to geographic cell location of calls made by cellphone." We have provided you with the cellphone location data. These items are contained on the compact disc in a folder titled OTHER GATHERED DATA. A sub-folder within that folder is labeled pen register, which contains this information.

### D. Surveillance Recordings.

You have requested law enforcement surveillance recordings utilized by law enforcement in this case. We sent the video recorded discs to a company to have them placed on a compact disc. Unfortunately, the company did not fully comply with our request. We are providing you, on separate compact discs several of the surveillance videos. Unfortunately, those discs do not contain all the material described in the label and what material is included is in a "stream," that is, there are no individual sub-files for each video tape reflected on the Video Surveillance Log which accompanies this letter. We have requested that the company that copied the videos reproduce the videos in a more user friendly manner. Once we receive those compact discs, we will provide them to you as well.

You will note in your review of the Video Surveillance Log that there are tapes listed and numbered which contain no description of the events surveilled. We have not provided you the discovery regarding the controlled buys made by cooperators in this case, including the video surveillance of those buys in an effort to protect the cooperator's identity. Those cooperator incidents are contained in tapes V-1 through V-8. There is also one video tape which contains a video statement of a government witness and as it is a *Jencks* statement, we decline to produce that tape. We will turn those items over to you at a reasonable time

prior to trial. Finally, you will also notice that some material has been removed from some of the descriptions, specifically, the names of the agents/officer conducting the taping. We decline to provide this material as a disclosure of a witness' identity. The bottom line with regard to video tapes is that we are providing what we can now. That material will eventually replaced by more user friendly material which will include all tapes on the log save those for which no description is provided on the attached log.

## V. FORENSIC EXAMINATION AND EXPERT TESTIMONY

  a. Forensic Examinations; B. Forensic Experts; C. and Other Experts

  You have requested "reports of any forensic examinations . . . experts to testify about any forensic examination . . . and experts to testify about topics other than forensic examination . . .." Other than the DEA laboratory reports, we have not as yet been provided with any reports pertaining to forensic examinations. We anticipate obtaining this information, and will provide the reports, the name of the expert, and a curriculum vitae. Specifically, we expect to obtain reports regarding trace examinations and fingerprint examinations. Once we have obtained transcripts we may also engage the services of an expert to characterize the activity discussed in intercepted conversations.

## VI. STATEMENTS

  You have requested any statements made by your clients, to law enforcement, be identified, and the content and surrounding circumstances be provided to you. Defendant Lena Brown made a statement, which was detailed in a FD-302, which is on the compact disc in the folder titled Miscellaneous, and within sub-folder titled 905 Glen Willow Drive, Apt 7, Capitol Hts., MD. Defendant John Smith, Ronald Cook, and Herbert Young also made statements which are reflected in previously provided FD-302 reports.

## VII. IDENTIFICATIONS

  You have requested that you be provided with "any identification procedures conducted by law enforcement officials with respect to any of our clients." No identification procedures were conducted on any of the defendants.

## VIII. TRIAL EXHIBITS

  You have requested that the government "produce diagrams, charts, maps, aerial photographs . . . as far advance of trial as possible." We will work with you in an effort to provide you an opportunity to examine these items prior to trial.

## IX. 404(b) EVIDENCE

  You requested all "Federal Rule of Evidence 404(b)" evidence the government intends to present at trial. The government filed a 404(b) motion outlining the criminal conduct/prior bad acts it intends to introduce for each defendant. At the time of the filing of the motion we did not have the police reports documenting the criminal conduct/bad acts. Once we receive all of the documentation, we will supplement our 404(b) motion.

5

X.  EXCULPATORY EVIDENCE

You have requested that we provide you with any "exculpatory information in [our] possession." We have no knowledge of any exculpatory evidence.  We are fully aware of our obligations in this area and if any exculpatory information comes to our attention, we will notify you and turn over the information immediately.

If you have any questions, feel free to contact me at (202) 353-1679 or Assistant United States Attorney William O'Malley at (202) 305-1749.

Sincerely yours,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

BY:    _____
WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney

_____
ANTHONY SCARPELLI
Assistant United States Attorney

_____
JOHN K. HAN
Assistant United States Attorney

cc: Chambers of Judge Huvelle

Attachment as noted

6